Dary Wayne HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00051–CR.

Court of Appeals of Texas, Texarkana.

Dec. 7, 1995.

---

Robert P. Abbott, Coppell, for appellant.

Sue Korioth, Michael J. Sandlin, Assistant District Attorneys, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Dary Wayne Harris appeals from his conviction on his plea of guilty for the offense of possession with intent to deliver a controlled substance.

Harris brings two points of error in which he argues that the trial court erred by denying his motion to suppress evidence and by assessing punishment in excess of the statutory maximum for a state jail felony. He was sentenced to twenty-five years' confinement.

Harris was arrested at approximately 2:15 p.m. on August 17, 1994, when two police officers observed him dancing in the street near the 900 block of Muncie Avenue. When the squad car pulled alongside Harris, the officers noticed that he had a metal object in his hand that they described as being consistent with a crack pipe made from antennas that have been broken off vehicles. The officers began questioning Harris and formed the opinion that he was intoxicated based upon his actions. When they asked him what he was holding in his left hand, he opened his hand to display the item and said, "My medicine stick." The police officers arrested him for possession of drug paraphernalia and for further investigation of his intoxication. During a search incident to arrest, an officer found a pill bottle in Harris's pocket that contained twenty-three rocks of crack cocaine.

Harris contends that the officers did not have adequate facts in their possession to justify a temporary investigative detention, and so the contraband obtained as a result of the search was improperly admitted into evidence.

There are three general categories of police and civilian interaction. The first category is that of an encounter. Police officers do not violate the Fourth Amendment by merely approaching an individual in public to ask questions. Such an encounter does not require any justification whatsoever on the part of an officer. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986).

The second category is that of a temporary or investigative detention. This is a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Such a detention requires that the officers have a reasonable suspicion that the person detained is involved in criminal activity. *Daniels v. State,* 718 S.W.2d at 704–05.

The third category is that of an arrest. An arrest must be justified by probable cause to believe that the suspect has committed or is committing an offense. *Amores v. State,* 816 S.W.2d 407, 416 (Tex. Crim.App.1991); *see generally Francis v. State,* 896 S.W.2d 406 (Tex.App.—Houston [1st Dist.] 1995, pet. granted).

Harris contends that the officers' actions here constituted an investigative detention. In a proper investigative detention under either state or federal law, law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.

1991). Nevertheless, even a temporary detention is not permissible unless the circumstances on which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Crockett v. State, supra.*

The police officers testified that Harris was behaving oddly. He was dancing in the street and waving his arms. The fact that one of the officers saw an item in Harris's left hand that was consistent with drug paraphernalia, when combined with his odd behavior, is sufficient to raise a reasonable suspicion that he was intoxicated because of the use of either drugs or alcohol. The officers testified that they believed he was intoxicated. Public intoxication is a criminal offense. The acts of the officers in getting out of their car and speaking to Harris constitute the very essence of a permissible investigative detention.

■■■ In a motion to suppress evidence, the trial judge is the exclusive trier of fact and is the judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court is free to believe or disbelieve the testimony of any witness. This court does not engage in its own factual review, but determines whether the trial judge's findings are supported by the record. If they are supported, this court is not at liberty to disturb them. *Etheridge v. State*, 903 S.W.2d 1 (Tex.Crim.App.1994); *Upton v. State*, 853 S.W.2d 548 (Tex.Crim. App.1993). The evidence presented to the trial court supports its ruling that the detention was proper.

■■■ Harris contends in his next point of error that the trial court erred by assessing punishment in excess of the statutory maximum for a state jail felony. He contends that there is no evidence about the weight of the cocaine; thus, he contends that the one gram limitation set out by the current version of TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp.1996) should apply, and the lesser penalty for a state jail felony, as prescribed in the current version, should have been the maximum available in this case. He further contends that, since the offense was committed only fifteen days before the effective date of the article, and he was not sentenced until well after the article went into effect, the new penalty should apply rather than the old one. This argument is refuted by the language of the enabling statute of the amended Health and Safety Code:

SECTION 2.08. (a) The change in law made by this article applies only to an offense committed on or after the effective date of this article. For purposes of this section, an offense is committed before the effective date of this article if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this article is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

SECTION 2.09. This article takes effect on September 1, 1994.

Act of May 29, 1993, 73rd Leg., ch. 900, §§ 2.08, 2.09, 1993 Tex.Gen.Laws 3714.

■■■ Harris suggests that the general language of TEX.GOV'T CODE ANN. § 311.031(a)(3), (b) (Vernon 1988) requires that in this case punishment should be imposed according to the newly amended statute, since the penalty was reduced by the reenactment, revision, or amendment to the statute.[1] In this case, however, a specific statute has provided a different result than

---

1. TEX. GOV'T CODE ANN. § 311.031 (Vernon 1988) provides:

(a) Except as provided by Subsection (b), the reenactment, revision, amendment, or repeal of a statute does not affect:

. . . .

(3) any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal; or

. . . .

(b) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

that provided by the general language of the Government Code.

This precise argument was found to be without merit in an opinion by the Amarillo Court of Appeals. In *Wilson v. State*, 899 S.W.2d 36 (Tex.App.—Amarillo 1995, pet. ref'd), the court acknowledged the language of the enactment quoted above and applied the axiom that, when two statutes conflict, the specific controls over the general, particularly when the specific provision is the later enactment. *Wilson v. State*, 899 S.W.2d at 39 (citing *City of Dallas v. Mitchell*, 870 S.W.2d 21, 22–23 (Tex.1994)).

■ Harris also argues that imposition of sentence under the former version of the Health and Safety Code is unconstitutional because it violates the Equal Protection Clause of the United States Constitution. This argument was also raised by the appellant in *Wilson*. The court noted that in order to successfully claim denial of equal protection, an accused must prove the existence of a class of which he is a part and unreasonable discrimination against that class. *Russell v. State*, 665 S.W.2d 771, 777 (Tex.Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984).

■ In the absence of class discrimination, an otherwise evenhanded statute will survive an equal protection challenge. *Beck v. State*, 583 S.W.2d 338, 344 (Tex.Crim.App. [Panel Op.] 1979). As in *Wilson*, Harris's argument in this case does not implicate any class discrimination. Harris was tried and sentenced in the same manner as all criminal defendants who committed similar offenses before September 1, 1994, and his trial and punishment comported with the directives of the savings provision quoted above.

For the reasons stated, the judgment of the trial court is affirmed.