The STATE of Texas, Appellant,

v.

Wayman E. SIMMANG, Jr., Appellee.

Nos. 04–95–00967–CR, 04–95–00968–CR.

Court of Appeals of Texas,
San Antonio.

April 9, 1997.

Brenda Levenstein, Assistant Criminal District Attorney, San Antonio, for appellant.

Stephanie L. Stevens, Katrina Mohrer, St. Mary's Criminal Justice Clinic, San Antonio, for appellee.

Before RICKHOFF, STONE and ONION,[1] JJ.

ONION, Justice (Assigned).

These appeals are taken by the State from orders granting motions to suppress evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp.1997). Appellant, Wayman E. Simmang, Jr., was charged with the offenses of knowingly and intentionally possessing two ounces or less of marihuana, TEX. HEALTH & SAFETY CODE ANN. § 481.121(a)(b)(1) (Vernon Supp.1997), and with unlawfully carrying a handgun. TEX. PENAL CODE ANN. § 46.02(a) (Vernon 1994). Appellant filed a motion to suppress evidence in each case seeking to suppress the fruits of what he claimed was an illegal warrantless arrest or detention and search and seizure. He relied upon constitutional provisions. *See* U.S. Const. amend. IV, XIV; Tex. Const. art. I, § 9. At the conclusion of a pretrial hearing, the trial court granted the motions to suppress. The State gave timely notice of appeal in each case.

The State advances the same points of error in each case. They shall be considered together. The points of error read:

(1) The trial court erred in granting the motion to suppress because the information provided to the police by the anonymous person, coupled with the corroboration by Officer Leal, established reasonable suspicion to detain Appellee, and the smelling of marijuana by Officer Leal as he approached Appellee's vehicle gave Officer Leal probable cause to search Appellee.

(2) The trial court erred in granting the motion to suppress because the infor-

mation provided to the police by the anonymous person, coupled with the §§ corroboration by Officer Leal, established reasonable suspicion to detain Appellee and ask him to step out of his vehicle, and Officer Leal saw a weapon inside Appellee's vehicle in plain view.

■■■ To decide the constitutional issues urged, we are presented with a record of a one-witness suppression hearing where the evidence was not developed as well as it might have been. At the outset, the State assumed the burden of proof[2] and called as its witness, San Antonio Police Officer Rudy Leal.

Leal testified that about 4:45 p.m. on March 22, 1995, he was on patrol in the 2500 block of Austin Highway. He was on duty in uniform and in a marked police vehicle when he received a call from the dispatcher about a sex offense. He was informed of an anonymous tip that a man was masturbating in a car located in a parking lot at the intersection of "Crestway and Randolph." The only description given of the individual was "a white male." The car was simply described as "a gold-colored four door sedan."

Officer Leal acknowledged that he was not given a license plate number, nor did he recall being given the make or model of the car. He admitted that he did not talk to the informant, did not know the informant, did not know the informant's identity, reliability or source of knowledge.

Officer Leal related that upon receiving the call, he immediately proceeded to the parking lot at the Michael's Arts and Crafts store where he observed a gold-colored car with a white male sitting in it. He did not see any other gold-colored car in the area. Leal parked his police vehicle "kitty-corner"

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Texas Gov't Code Ann. § 74.003(b) (Vernon 1988).

2. As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. A defendant may meet this initial burden of proof by establishing that an arrest, detention,

search or seizure occurred without a warrant. *See Russell v. State,* 717 S.W.2d 7, 9–10 (Tex. Crim.App.1986); *Rumsey v. State,* 675 S.W.2d 517, 519–21 (Tex.Crim.App.1984); *Carroll v. State,* 911 S.W.2d 210, 215 (Tex.App.—Austin 1995, no pet.); *see also* 42 GEORGE E. DIX AND ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE, § 29.64 at 86–87, § 29.68 at 92 (Texas Practice 1995) (hereinafter Dix).

to the gold-colored car. Officer Lozcano arrived about the same time and parked his vehicle behind Leal's. Leal admitted that "we kind of basically blocked him in. He couldn't get out." Leal conceded that the individual in the car was not free to leave and not free to drive away. Leal stated that his intent at the time was to investigate "the call," and that he considered that the man in the car was detained and in custody.

Leal approached the blocked car and identified appellee as the man he saw seated inside the car. Leal observed no criminal activity. Appellee's hands were not in view, but appellee was dressed and his clothing was intact. The car window was rolled down and Leal testified that he smelled the odor of marihuana emanating from the interior of the car. Leal ordered appellee out of the car and then started "searching him [appellee] for drugs." During the search, Leal related that he detected the strong odor of marihuana on appellee's clothing. The officer then stated that he smelled the marihuana odor when he was "searching" not for drugs but weapons, and then changed that to "frisking" for weapons. He found no weapons on appellee's person. At this point, Leal indicated that he looked into the car through an open car door and saw in plain view a weapon on the floorboard on the driver's side of the transmission hump. Appellee was immediately arrested for unlawfully carrying a weapon and given his *Miranda*[3] warnings. A search of appellee's person produced no drugs or weapons. Appellee was handcuffed and placed in a police vehicle. Officer Leal then began an "inventory" of the car, and found a box of bullets and less than two ounces of marihuana in a baggie inside a closed briefcase on the front seat.

Appellee was arrested for the possession of marihuana and Leal "inventoried further." Upon further questioning by the prosecutor, Leal indicated that he was actually searching the car incident to arrest.

On cross-examination by appellee, Officer Leal was confronted with his offense report which reflected that Leal had smelled the odor of marihuana only when he was frisking or searching appellee outside of the car. He stated that his report was correct that "basically" was what happened. On re-direct examination, he stated that he had detected the marihuana odor both times. On recross-examination, the record reflects:

Q. Okay. Your report indicates that you did not smell marijuana until you had Mr. Simmang outside of the vehicle, and was frisking him.

A. That's what my report says.

Leal then agreed that he had prepared the report the day of the arrest when his memory was better. When asked again if his report was incorrect, Leal stated that he "believed it to be a fact." The officer's conflicting testimony left a question for the trial court to resolve.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court may accept or reject any or all of a witness's testimony or evidence offered. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex. Crim.App.1993). In reviewing the trial court's decision, an appellate court views the evidence in the light most favorable to the trial court's ruling. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App. [Panel Op.] 1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). In fact, an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's findings. *Romero,* 800 S.W.2d at 543. The reviewing court is not at liberty to disturb supported findings of fact absent an abuse of discretion. *Etheridge v. State,* 903 S.W.2d 1, 15 (Tex. Crim.App.1994), *cert. denied* — U.S. —, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995); *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App. 1991). The appellate court should defer not only to the trial court's findings regarding the historical facts but also to the trial court's conclusions regarding the legal significance of those facts. *DuBose v. State,* 915 S.W.2d 493, 497 (Tex.Crim.App.1996); *State v. Carter,* 915 S.W.2d 501, 504 (Tex.Crim. App.1996). If findings and conclusions are

---

3. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

not filed, it is presumed that the trial court made findings necessary to support its ruling so long as those implied findings are supported by the record. *Jones v. State,* 926 S.W.2d 386, 388 (Tex.App.—Fort Worth 1996, pet. ref'd); *Ice v. State,* 914 S.W.2d 694, 695–96 (Tex.App.—Fort Worth 1996, no pet.); *see also DuBose,* 915 S.W.2d at 497, 497 n. 5. The appellate court will normally address only the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543. If the trial court's decision is correct on any theory of the law applicable to the case, it will be sustained even though the trial court may have given the wrong reason for its ruling. *Id.; Calloway v. State,* 743 S.W.2d 645, 651–52 (Tex.Crim.App.1988).

The Fourth Amendment does not, of course, provide guarantees against all searches and seizures, but only against unreasonable searches and seizures. *See Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960); *Worley v. State,* 912 S.W.2d 869, 872 (Tex. App.—Fort Worth 1995, pet. ref'd). The same is true of article I, section 9 of the Texas Constitution. *Giacona v. State,* 372 S.W.2d 328, 333 (Tex.Crim.App.1962), *cert. denied,* 375 U.S. 843, 84 S.Ct. 92, 11 L.Ed.2d 70 (1963); *see also Alvarez v. State,* 857 S.W.2d 143, 145–46 (Tex.App.—Corpus Christi 1993, pet. ref'd).

There are three general categories of police and civilian interaction which have been recognized in both federal and state cases. *See e.g., Florida v. Royer,* 460 U.S. 491, 497–502, 103 S.Ct. 1319, 1324–26, 75 L.Ed.2d 229 (1983); *Harris v. State,* 913 S.W.2d 706, 708 (Tex.App.—Texarkana 1995, no pet.); *Francis v. State,* 896 S.W.2d 406, 408 (Tex.App.—Houston [1st Dist.] 1995), *pet. dism'd,* 922 S.W.2d 176 (Tex.Crim.App.1996). The first category is an encounter. *Terry v. Ohio,* 392 U.S. 1, 13, 88 S.Ct. 1868, 1876, 20 L.Ed.2d 889 (1968) spoke of "encounters" initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute a crime. Police officers do not violate the Fourth Amendment by merely approaching an individual in public to ask questions. *Royer,* 460 U.S. at 498, 103 S.Ct. at 1324; *Francis,* 896 S.W.2d at 408–09. Such an encounter does not require any justification whatsoever on the part of the officer. *United States v. Mendenhall,* 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980); *Harris,* 913 S.W.2d at 708.

The second category is that of a temporary or investigative detention. In *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), the United States Supreme Court defined the "stop" which allows the "frisk" discussed in *Terry.* A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. However, in order to justify such a stop the officer must have "specific articulable facts," which, in the light of his experience and personal knowledge, together with other inferences from the facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App.1986); *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983). These "specific articulable facts" must create in the individual officer's mind a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Johnson,* 658 S.W.2d at 626. Thus, such a detention requires the officer to have a reasonable suspicion that the person detained is involved in criminal activity. *Harris,* 913 S.W.2d at 708. The suspicious conduct relied upon by the officer must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them. *Montano v. State,* 843 S.W.2d 579, 582 (Tex.Crim. App.1992) (citing *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991)). A detention based on a hunch is illegal. *Comer,* 754 S.W.2d at 657. Mere suspicions do not meet the test. *Hull v. State,* 613 S.W.2d 735, 739 (Tex.Crim.App. [Panel Op.] 1981).

The third category is that of an arrest. An arrest must be justified by probable

cause to believe that the suspect has committed or is committing an offense. *Henry v. United States,* 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Amores v. State,* 816 S.W.2d 407, 416 (Tex.Crim.App. 1991); *Francis,* 896 S.W.2d at 409. Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Hughes v. State,* 878 S.W.2d 142, 154 (Tex.Crim.App.1992), *cert. denied,* 511 U.S. 1152, 114 S.Ct. 2184, 128 L.Ed.2d 902 (1994); *Amores,* 816 S.W.2d at 411.[4]

■ We know that of the three categories, investigative detentions and arrests are "seizures" under the Fourth Amendment. *Amores,* 816 S.W.2d at 417 (Campbell, J. dissenting). The Texas Constitution is coextensive with the Fourth Amendment in the standard applied to a *Terry* stop. *See* TEX. CONST. art. I, § 9; *State v. Sailo,* 910 S.W.2d 184, 187 n. 1 (Tex.App.—Fort Worth 1995, pet. ref'd). *California v. Hodari D.,* determined that a person is seized for the purposes of the Fourth Amendment only if a reasonable person would not believe he or she was free to leave, and 1) the defendant is subjected to a show of authority and he or she yields, or 2) physical force is used to limit movement. *California v. Hodari D.,* 499 U.S. 621, 624–29, 111 S.Ct. 1547, 1549–52, 113 L.Ed.2d 690 (1991). In *Johnson v. State,* 912 S.W.2d 227, 232 (Tex.Crim.App.1995), the Court of Criminal Appeals in interpreting article I, section 9 of the Texas Constitution adopted the *Hodari D.* test in case of either an investigative detention or arrest.

In the instant case, the prosecution does not contend that there was a mere encounter between appellee and the police, nor does it contend that there was a valid arrest based on probable cause. The State urges in both points of error that the anonymous tip coupled with corroboration by Officer Leal established reasonable suspicion to detain appellee for the purpose of an investigative stop, and that Leal smelled marihuana as he approached the car giving him probable cause to search appellee, and while searching appellee outside the car saw a weapon in the car in plain view.

■ There can be no question under the circumstances that appellee was seized for the purposes of the Fourth Amendment and article I, section 9 of the Texas Constitution. Was there, however, a valid investigation detention or stop based on reasonable suspicion? Reasonable suspicion is a less demanding standard than probable cause because it can be established with information that is different in quantity or content and even less reliable than that required to show probable cause. Reasonable suspicion, however, like probable cause, is dependent upon both the content of information possessed by the police and its degree of reliability. Both factors quantity and quality, are considered in the totality of the circumstances which is the test to be applied. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990); *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). The reasonableness of an investigative detention turns on the totality of the circumstances in each case. *Mendenhall,* 446 U.S. at 557, 100 S.Ct. at 1879; *Davis v. State,* 794 S.W.2d 123, 125 (Tex.App.—Austin 1990, pet. ref'd).

An anonymous tip usually will justify the *initiation* of a police investigation. *Clemons v. State,* 605 S.W.2d 567, 570 (Tex.Crim.App. [Panel Op.] 1980); *see Mann v. State,* 525 S.W.2d 174, 176 (Tex.Crim.App.1975). However, an anonymous tip alone will rarely requisite level of suspicion necessary to justify an investigative detention. *White,* 496 U.S. at 329, 110 S.Ct. at 2415; *Giossi v. State,* 831 S.W.2d 887, 889 (Tex.App.—Austin 1992, pet. ref'd). There must be additional facts available to the officer. When an investigative

---

4. In Texas, of course, warrantless arrests are authorized only in limited circumstances and are governed primarily by chapter Fourteen of the Texas Code of Criminal Procedure. *Amores,* 816 S.W.2d at 413; *Lowery v. State,* 499 S.W.2d 160, 164–65 (Tex.Crim.App.1973).

detention is based *solely* on an anonymous tip, the court often has no way of evaluating the reliability of the information from the anonymous source. *See Ebarb v. State*, 598 S.W.2d 842, 844–45 (Tex.Crim.App.1980); *Davis*, 794 S.W.2d at 125. If an anonymous tip has a fairly low degree of reliability, more information will be required to establish the requisite level of suspicion to justify an investigative detention. *White*, 496 U.S. at 330, 110 S.Ct. at 2416. An anonymous tip may, however, be sufficient if it contains sufficient "indicia of reliability" or if some aspects of it are sufficiently corroborated. *White*, 496 U.S. at 329–32, 110 S.Ct. at 2415–17; Dix, § 10.05 at 419. "At a minimum, ... the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent persons under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991); accord *Montano*, 843 S.W.2d at 582.

In the instant case, the conclusory anonymous tip did not reflect the informant's "veracity," "reliability," or "basis of knowledge" which are still relevant in a reasonable suspicion context, although in a lesser degree than in a probable cause context. *See White*, 496 U.S. at 328–29, 110 S.Ct. at 2415. The informant did not assert any personal knowledge and no additional facts within the tip indicated any special or personal knowledge on the part of the informant. *Cf. Rojas v. State*, 797 S.W.2d 41, 44 (Tex.Crim.App.1990). The tip gave no description of the offending individual as to age, physical appearance, or clothing. He was described only as a "white male," which description would fit a large segment of the population. The car was described only as a gold-colored four door sedan. No license plate number, make, or model of the car were included in the tip.[5] The tip may have indicated the offense was in progress, but the record does not reflect when the tip was received by the dispatcher. An individual in an automobile is highly mobile. When

Officer Leal arrived at the parking lot he observed a gold-colored car with a white male seated therein. He did not see any other gold-colored cars. Leal observed no criminal activity in the public parking lot and there was no suggestion to connect the white male with any unusual activity. Officers Leal and Lozcano parked their police vehicles so as to block appellee's car. Appellee was not free to leave and Leal considered him detained and in custody before Leal approached the car. Without any proximity of time between the stop and the reported event, it would not be reasonable to conclude solely on the basis of the match of the color of the car that the blocked car was the car involved in the reported incident. *See Glass v. State*, 681 S.W.2d 599, 601 (Tex.Crim.App. 1984). The fact that a white male occupied the car did not aid the level of suspicion. Nor did additional or sufficient facts surface that would have authorized the officer blocking the car and detaining appellee. Leal did not witness anything that could be considered wrongful or criminal conduct or anything else, criminal or noncriminal, that would be sufficient to corroborate the anonymous tip.

 Appellee was detained on the basis of the unsubstantiated suspicions of an anonymous caller of an unknown reliability and without specific and articulable facts to justify the stop. From the totality of the circumstances, the evidence appellee sought to suppress was the fruit of the unlawful detention. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *Baldwin v. State*, 606 S.W.2d 872, 874–75 (Tex.Crim.App. [Panel Op.] 1980); *Ebarb*, 598 S.W.2d at 845 (holding that a gun seen in plain view should have been suppressed because of the unlawful detention); *Giossi*, 831 S.W.2d at 890. The State claims for the first time on appeal that Officer Leal had probable cause to search the car[6] because he smelled the odor of marihuana as he approached the blocked car and the detained

---

5. Officer Leal did testify that his offense report prepared after the detention and arrest reflected the car was a "Chevy Spirit." It was not shown that such description was included in the tip. Moreover, it was never clarified whether the

officer had reference to a Dodge Spirit or a Chevrolet Sprint.

6. *See Amos v. State*, 819 S.W.2d 156, 161 (Tex. Crim.App.1991).

individual. Such claim does not untaint the illegal investigative stop. Moreover, in view of the conflicting evidence, the trial court as trier of fact at the suppression hearing, did not have to accept Officer Leal's testimony that he first smelled the odor of marihuana as he approached the car. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Crim.App. [Panel Op.] 1980). The trial court did not abuse its discretion in granting the motions to suppress evidence. State's points of error one and two are overruled.

The trial court's orders granting the motions to suppress are affirmed.