COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-159-CR

 

 

ERIC EUGENE GANSKY                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE COUNTY COURT AT LAW OF PARKER COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellant Eric Eugene Gansky appeals
from his DWI conviction claiming the trial court erroneously denied his motion
to suppress.  We affirm.

                                       Factual
Background








In the early morning hours of
November 10, 2002, Parker County Sheriff=s Deputy Stella Perkins was on patrol, stopped in the I-20 median
facing west.  She was monitoring
traffic with radar and her CB radio when she heard truck drivers asking for
police assistance, saying there was a white car traveling on the wrong side of
the interstate.  She had previously
noticed a white car driving west in the westbound lane because it was driving
relatively slow and because there had been little other traffic at that
time.  The truck drivers said the
white car was driving east in the westbound lane at the 404 mile-marker and
were asking for a police officer. 
While Deputy Perkins was trying to communicate with the truck drivers
about the white car, a semi-truck pulled over onto the shoulder and the driver
got out and started waving at her, pointing back towards the east.  Deputy Perkins believed the truck driver
was signaling to her regarding the white car.  Without stopping, she proceeded
eastbound trying to follow the car as truck drivers continued giving her the
car=s location by mile-marker. 
One of the truck drivers told her the white car almost hit a semi-truck
at the 405 mile-marker as it continued eastbound in the westbound lane, and the
truck driver who was almost hit stated so over the CB radio.  








Truck drivers continued to
monitor the vehicle as it passed the 406 mile-marker and then told Deputy
Perkins that it crossed the median near the 407 mile-marker back into the
eastbound lane of traffic and then exited at the 407 exit.  Once Deputy Perkins heard this she also
exited at the 407 exit and continued on the eastbound access road where the
truck drivers said the white car was. 
Then, the truck drivers said the car had pulled into the Burger
King-Texaco station at the corner of South Main and the access road.  As she pulled into the parking lot, one
of the truck drivers told her that the white car was driving through the gas
pumps and going across the parking lot. 
At this point, Deputy Perkins saw the only white car in the parking lot,
driving through the pumps, and initiated a traffic stop.  Deputy Perkins arrested appellant for
DWI.  After the trial court denied
appellant=s motion to
suppress, he entered a negotiated plea of guilty and the trial court assessed
punishment at 180 days=
confinement, probated for twenty-four months, with a $600 fine.  

                                          Issue
Presented

In one issue appellant
challenges the trial court=s ruling denying his motion to suppress based upon the illegality of
the officer=s stop.  Appellant contends that the officer had
insufficient corroboration of the anonymous tip to justify the Terry
stop of his vehicle.

                                       Standard
of Review








The Fourth Amendment protects
against unreasonable searches and seizures.  U.S.
Const. amend. IV.  For an
arrest to be justified under the Fourth 
Amendment, it must be accompanied by probable cause to believe that a
person has engaged in or is engaging in criminal activity.  Henry v. United States, 361 U.S.
98, 102, 80 S. Ct. 168, 171 (1959). 
A detention, however, may be justified on less than probable cause if a
person is reasonably suspected of criminal activity based on specific,
articulable facts.  Terry v. Ohio,
392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); Carmouche v. State, 10
S.W.3d 323, 328 (Tex. Crim. App. 2000). 








We review a trial court's
ruling on a motion to suppress evidence under a bifurcated standard of
review.  Carmouche, 10 S.W.3d
at 327; Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision,
we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex.
App.CFort Worth 2003, no pet.). 
The trial judge is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).   Therefore,
we give almost total deference to the trial court's rulings on (1) questions of
historical fact and (2) application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644,
652-53 (Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 67 (Tex.
App.CFort Worth 2004, pet. ref=d); Harrison v. State, 144 S.W.3d 82, 85 (Tex. App.CFort Worth 2004, pet. granted); Best, 118 S.W.3d at
861-62.  However, when the trial
court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court's rulings on mixed questions of law
and fact.  Johnson, 68 S.W.3d
at 652-53.  

When the trial court does not
file findings of fact, we are to view the evidence in the Alight most favorable to the trial court=s ruling and assume that the trial court made implicit findings of fact
that support its ruling as long as those findings are supported by the record.@  Ross, 32 S.W.3d at 855; Guzman, 955 S.W.2d at 89; State v.
Maldonado, No. 01-03-00774-CR, 2004 WL 2306703, at *2 (Tex. App.CHouston [1st Dist.] Oct. 14, 2004, no pet.).

While the trial court filed
no written findings of fact or conclusions of law in connection with the
suppression hearing, the trial judge concluded that there were Aseveral corroborations@ of the tips.  Because it
is clear from the trial court=s statements on the record, and because the record supports the trial
court=s conclusions, we must give the trial court almost total deference in
reviewing those historical facts but review de novo the application of the law
to those facts.  See Ross,
32 S.W.3d at 856-57. 

                                             Discussion








In this case, the arresting
officer, Deputy Perkins, was the only person to testify at the suppression
hearing.  The only fact that might
have been in issue was whether the vehicle appellant was driving had actually
been in an accident.  Appellant
contends that because the white car Deputy Perkins stopped had no damage, it
could not have been the vehicle the truck drivers were describing as driving
the wrong way or striking a semi-truck; thus, Deputy Perkins would not have had
a reasonable suspicion to stop appellant=s white car.  However, a
closer look at Deputy Perkins=s testimony shows some equivocation as to whether the truck drivers
reported that the suspect vehicle had actually struck a Asemi.@

Deputy Perkins testified that
she heard a report that the vehicle had Aalmost hit or they thought he had actually hit a semi at the 406
mile-marker.@  Appellant cross-examined Deputy Perkins
extensively regarding this issue in an effort to cast doubt on whether she had,
in fact, stopped the correct vehicle since appellant=s car had no damage.  But,
as the testimony shows, there was no definitive testimony that the white car actually
struck a semi, only that it almost had.  Because this is the only potential fact
issue that might have been determined by the trial court, we apply the
bifurcated standard to the trial court=s findings and rulings.  See
id. at 856.  








We must conclude that the
trial court implicitly found that the white car described by all the truck
drivers was not actually in a collision and that it had only narrowly missed a
semi because appellant=s white car
had no damage.  Further, in
reviewing Deputy Perkins=s testimony
on direct examination, it is apparent that one of the truck drivers
specifically identified the white car while it actually drove around in the
Burger King-Texaco parking lot at the same time Deputy Perkins arrived at the
parking lot.  This particular
testimony gives further credence to the trial court=s apparent conclusion that the white car only Aalmost@ struck
another semi.  Applying great
deference to the trial court=s implicit findings, we turn to a review of the trial court=s application of law to these facts.  Id. at 857-58.

                   Applicable
Law Regarding Investigative Detentions

Appellant cites two cases, Alabama
v. White and State v. Simmang, to support his contention that Deputy
Perkins had insufficient corroboration to justify her investigative stop and
detention because Deputy Perkins was relying solely on anonymous tips.  Alabama v. White, 496 U.S. 325, 329,
110 S. Ct. 2412, 2415 (1990); State v. Simmang, 945 S.W.2d 219, 223
(Tex. App.CSan Antonio
1997, no pet.).  Conversely, we
believe this case is distinguishable from Simmang, but agree it is
controlled by the principles announced in White, as well as other more
recent Texas cases discussing anonymous tips and reasonable suspicion.  See White, 496 U.S. at 329, 110
S. Ct. at 2415; Brother v. State, 166 S.W.3d 255 (Tex. Crim. App. 2005);
Ross, 32 S.W.3d at 853; Pipkin v. State, 114 S.W.3d 649 (Tex. App.CFort Worth 2003, no pet.); State v. Stolte, 991 S.W.2d
336 (Tex. App.CFort Worth,
1999, no pet.); Glover v. State, 870 S.W.2d 198 (Tex. App.CFort Worth 1994, pet. ref=d).








In Alabama v. White, the
United State Supreme Court was asked to review the Alabama Court of Criminal
Appeals=s reversal of a trial court=s ruling denying a defendant=s motion to suppress evidence seized during a stop of the defendant=s vehicle.  496 U.S. at
328, 110 S. Ct. at 2415.  The
Supreme Court reversed the Alabama court=s determination holding that the officer who received a detailed
anonymous tip on the location of a particular vehicle and occupant had
reasonable suspicion to stop, detain, and investigate.  Police had received a tip that the
respondent, White, would be leaving a particular apartment at a particular time
in a certain vehicle, that she would be going to a particular destination, and
that she was in possession of cocaine. 
Based on this information, officers went to the apartment complex and
waited while White emerged from the designated apartment and got into the
described vehicle.  They then
followed her to the identified motel, at which point they stopped her right
before she arrived.  Apparently,
White gave the officers consent to search her vehicle where they found
marijuana.  After they arrested her,
they found cocaine in her purse.  Id.
at 327-28, 110 S. Ct. at 2414-15.








The Supreme Court found
sufficient corroboration of the anonymous tip to support the stop.  Id. at 331, 110 S. Ct. at
2416.  Specifically, the Supreme
Court reviewed the totality of the circumstances to conclude that the level of
the reliability of the tip was increased because the officers had been able to
corroborate much of the content of the tip.  Id. at 329, 110 S. Ct. at
2415.  The Supreme Court pointed to
certain details of the tip that the officers had been able to corroborate such
as the apartment from which the respondent left, the description of the vehicle
she entered, the time she left, and her likely destination.  Id. at 331, 110 S. Ct. at
2416-17.  The Supreme Court focused
not only on the content of the information but its degree of reliability,
noting that both quantity and quality of information contribute to the totality
of the circumstances surrounding an analysis of the reasonableness of the
officer=s suspicion.  The amount of
reliability obviously increases with corroboration of future events described
by the caller.  Id. at 330-31,
110 S. Ct. at 2416.








Similarly, the Texas Court of
Criminal Appeals upheld this court=s affirmance of a trial court=s denial of a motion to suppress in a DWI case.  Brother v. State, 85 S.W.3d 377
(Tex. App.CFort Worth
2002), aff=d 166 S.W.3d 255 (Tex. Crim. App. 2005).  In Brother, the appellant
challenged the officer=s stop
claiming that because the officer himself had not personally observed Brother=s erratic driving and instead relied on a citizen-informant=s 911 call to police dispatch, the officer lacked reasonable suspicion
to stop him.  Id. at
381-82.  In Brother, the
citizen-informant continued to follow the vehicle while remaining on her cell
phone with the 911 dispatcher until the officer stopped the suspect.  Additionally, the citizen gave Brother=s license plate number to the dispatcher and turned on her hazard
lights while following Brother as instructed by the dispatcher.  The officer said he was able to
correctly identify the vehicle because he had the license plate number and a
visual of the citizen=s car with
her hazard lights on.  Both the
arresting officer and the citizen testified to these facts at the suppression
hearing. Id. at 379-80.

The trial court denied
Brother=s motion to suppress, this court affirmed the trial court, and the
court of criminal appeals upheld our decision.  Id. at 385; see also 166
S.W.3d at 261.  The court of
criminal appeals noted that the Afactual basis for stopping a vehicle need not arise from the officer=s personal observation, but may be supplied by information acquired
from another person.@  Brother, 166 S.W.3d at 257 (citing Adams
v. Williams, 407 U.S. 143, 147, 92 S. Ct. 1921, 1923-24 (1972)).  The court of criminal appeals emphasized
the wide acceptance of citizen-informant reliability that is generally shown by
the very circumstances giving rise to the incriminating information the citizen
is reporting.  Id. at 258. 








Further, citing to this court=s opinion in Pipkin v. State, the court of criminal appeals
noted that we upheld the trial court=s denial of Pipkin=s challenge to the officer=s investigatory stop because the citizen-informant  relayed sufficient facts to 911 to
justify the stop.  Id.
(citing Pipkin, 114 S.W.3d at 652-53).  In Pipkin, the citizen-informant
detailed the vehicle=s extremely slow
speed, observed that the driver was driving in the fast lane of traffic while
steering with his knees and smoking what appeared to be a crack pipe, gave a
description of the vehicle and its location, and additionally provided his
identification and contact information to the dispatcher.  Pipkin, 114 S.W.3d at
652-53.  In Pipkin we noted
that the citizen-informant=s Averacity,
reliability, and basis for knowledge are highly relevant in determining the
value of the caller=s report.@  Id. at 654.  We also noted that trial courts should
look to not only the content of the information but the quality of the
information in reviewing an officer=s decision to stop and detain. 
Id.  

Corroboration
by the law enforcement officer of any information related by the informant may
increase the reliability of the information.  A[C]orroboration@ in this
sense does not mean that the officer must personally observe the conduct that
causes him to reasonably suspect that a crime is being, has been, or is about
to be committed.  Rather
corroboration refers to whether the police officer, in light of the
circumstances, confirms enough facts to reasonably conclude that the
information given to him is reliable and a temporary detention is justified. 

Id. at
654 (citations omitted).








As we observed in Pipkin,
and the court of criminal appeals emphasized in Brother, the reliability
of the citizen-informant is greater than that of a paid informant.  Further, the fact that the information
being supported by the officer=s conclusion that an investigative stop was justified and his ability
to identify the correct vehicle increased the reliability of the
information.  Brother, 166
S.W.3d at 258.

Similarly, in State v.
Stolte, we reversed the trial court=s order suppressing evidence from an officer=s investigatory stop based upon a citizen-informant=s anonymous cell phone call regarding a possible DWI.  991 S.W.2d at 339.  In Stolte, the dispatcher was
able to give the officer a description of the suspect vehicle, including color,
make, and style as well as its license plate number.  Id.  Further, as in Brother, the
caller continued to follow the truck, gave the dispatcher updates as they
drove, provided the location and description of the vehicle, including the exit
location of the vehicle, pulled in behind the officer=s patrol car once the officer stopped the driver, and then identified
himself to the officer.  Both the
officer and the citizen-informant testified at the suppression hearing.  We held that although the citizen-informant=s identification was initially unknown to the officer who stopped the
vehicle, the officer knew that the citizen-informant was continuing to monitor
the suspect vehicle, which increased the reliability of the information the
citizen-informant was providing.  Id.
at 340.  Moreover, the information
the citizen-informant provided regarding the identity of the vehicle, including
the license plate number, increased the likelihood that the officer had stopped
the correct vehicle.








Even if we compare the facts
of this case with those of the Simmang case cited by appellant, we still
reach the same result.  In State
v. Simmang, the San Antonio Court of Appeals upheld a trial court=s suppression order.  945
S.W.2d at 225.  There, an officer
received one call from an anonymous person who claimed that a lone white male
was committing a sexual offense in a Agold-colored four door sedan@ in a parking lot at a particular intersection.  Id. at 220.  As in our case, no license plate, make,
or model was provided.  When the
officer approached and looked in the vehicle, he claimed he smelled a strong
odor of marijuana coming from the vehicle. 
Id. at 221.  The
officer ordered the occupant from the vehicle, searched him, and turned back toward
the vehicle where he saw a weapon in plain view on the floor of the
vehicle.  Id.  In searching the vehicle, the officer
found less than two ounces of marijuana. 
Id.  The trial court
granted the occupant=s motion to
suppress and the appellate court upheld that ruling.  Id. at 225.  The arresting officer was the only one
to testify at the hearing.  Id.
at 220-21.








The appellate court noted
that there was a discrepancy in the officer=s  testimony from his
written offense report that said he did not smell the odor until he had
occupant outside and was searching him as opposed to upon approaching the
vehicle.  Id. at 221.  Pointing to this discrepancy and giving
great deference to the trial court=s findings, the appellate court concluded that the trial court must
not have believed the officer=s testimony.  Id.  Also, the appellate court noted the
anonymous nature of the tip, the lack of detail regarding the identification of
the vehicle or the suspect, and the lack of corroboration.  Id. at 224.  In other words, the low quantity of the
tips coupled with the lack of corroboration either by other witnesses or
officers substantially diminished the quality of this anonymous tip.








In Stolte, we also
addressed another factor to consider in evaluating the totality of the
circumstances surrounding the reasonableness of an officer=s stop: the urgency of the particular situation.  991 S.W.3d at 342.  In Stolte, an anonymous
citizen-informant had witnessed the suspected driver driving so slowly in the
middle lane of a high traffic highway that drivers in all lanes were slowing
down.  Id. at 340.  The citizen-informant had also observed
the driver veering in and out of lanes such that he appeared to be a danger to
himself as well as to others.  Id.  We held that, under the facts of that
case, it would have been unreasonable, in light of the Aimportant public and private interests involved,@ to have delayed the stop since the officer had located the described
vehicle where the citizen-informant said it was in order to further corroborate
the information that had been relayed to him.  Id. at 343.  In other words, the totality of the
circumstances also includes an evaluation and weighing of both the Aimportant public and private interests involved.@  Id.  Here, the important public interest
is extremely compelling; a driver driving on the wrong side of an interstate
highway creates an extremely dangerous situation not only for the driver, but
for the public as well.  Thus, we
conclude that the urgency of the situation also contributed to the
reasonableness of the officer=s stop.








Admittedly, there are some
factual distinctions in the case at bar from the cases we have discussed, but
we conclude that more of the factors militate in favor of the trial court=s ruling.  The anonymous
tip here was really a multitude of anonymous tips; Deputy Perkins testified
that she knew she talked to at least five different truck drivers, plus the
truck driver who stopped and flagged her from the side of the road.  The tips actually came from a group of
anonymous tipsters who would have had a mutual interest in insuring that a
driver driving the wrong way on an interstate was stopped and removed.  Moreover, Deputy Perkins testified on
cross-examination that she heard multiple truck drivers identify the white car
as driving in the wrong direction and that both the number of sightings along
with the Aemotion in
their voice[s]@ led her to
believe they were frantically describing what they were simultaneously observing,
all of which support the veracity and reliability of the information Deputy
Perkins was receiving.  AUnsolicited information concerning a crime in progress provided to
police in a face-to-face encounter by a concerned citizen who is not connected
with police and is not a paid informant is inherently reliable.@  Harrison, 144
S.W.3d at 86; see also State v. Sailo, 910 S.W.2d 184, 188-189 (Tex.
App.CFort Worth 1995, pet. ref=d).  Although the
information Deputy Perkins heard was not delivered face-to-face, at least one
of the truck drivers had stopped, which would have at least made him
identifiable had she stopped to get his identification.  Thus, both the quantity of callers and
their contemporaneous sightings increased the reliability and accuracy of their
descriptions.  

Although tips came in from
several truck drivers, there was at least one truck driver who watched and
described the vehicle=s exit from
the highway, as well as its movement through a specifically identified parking
lot.  While Deputy Perkins=s own testimony regarding the vehicle=s near-crash was equivocal, we cannot say that the trial court
unreasonably concluded that appellant=s vehicle might have had no damage.  Critically, the potential danger and extreme
risk to the public further justified Deputy Perkins=s conclusion that an investigative detention was not only reasonable
but necessary.  Although  Deputy Perkins lacked a license plate
number, make, or model of the vehicle, she followed and identified the vehicle
by virtue of the multiple tipsters. 
For all the foregoing reasons, we conclude and hold, under the totality
of the circumstances, that the trial court properly denied appellant=s motion to suppress.  We
overrule appellant=s sole
issue.








                                             Conclusion

Because we overrule appellant=s sole issue, we affirm the trial court=s suppression ruling and affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON,
GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: 
October 13, 2005