# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-08-00774-CR
---

**Mark Brand, Appellant**

**v.**

**The State of Texas, Appellee**

---
**FROM COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY**
**NO. C-1-CD-06-755073**
**HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING**
---

### M E M O R A N D U M   O P I N I O N

After the trial court denied his motion to suppress evidence obtained during a traffic stop, appellant Mark Brand pleaded guilty to driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). The agreed sentence was three days in jail and court costs. Brand appeals the trial court's denial of his motion to suppress. We affirm the judgment of the trial court.

At 2:47 a.m. on December 14, 2006, a 911 caller reported a fight outside a residence near Doc Holliday Trail and Holliday Court in Austin. Officer Domingo Rodriguez was the first to arrive on the scene and, upon arrival, observed a tan-colored extended-cab truck leaving the scene. Witnesses at the scene indicated that the persons involved in the fight had left in the tan truck. Officer Rodriguez advised dispatch and officers still in route about the tan truck leaving the scene. Officer Jon Oldham, who had also responded to the dispatch, but had not yet arrived at the scene, observed a gold truck as he neared the scene, about five minutes after the initial dispatch came in.

After learning about the tan truck leaving the scene, Officer Oldham and Officer Rodriguez communicated by radio to confirm that the truck was an extended cab. When he received this confirmation, Officer Oldham conducted a stop of the truck.

Based on evidence obtained pursuant to the stop, Brand was charged by information with driving while intoxicated. After the trial court denied his motion to suppress, Brand pleaded no contest to the charge of driving while intoxicated, and pursuant to the plea agreement, his sentence was three days in jail and court costs.

In a single point of error, Brand argues that the trial court erred in denying his motion to suppress. The stop was illegal, Brand argues, because Officer Oldham did not have the reasonable suspicion required to initiate the stop.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's findings of fact are given "almost total deference." *Carmouche*, 10 S.W.3d at 327-28; *Guzman*, 955 S.W.2d at 89-90. The trial court's denial of a motion to suppress is reviewed for abuse of discretion, *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999), but when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we apply a de novo standard of review, *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

A police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *Hernandez v. State*, 983 S.W.2d 867,

2

869 (Tex. App.—Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods*, 956 S.W.2d at 38. A detaining officer must have specific, articulable facts that, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.*

An officer may rely upon information received through an informant, rather than on his direct observation, so long as the officer confirms enough facts so that he may reasonably conclude that the information provided is reliable and a detention is justified. *See Alabama v. White*, 496 U.S. 325, 330-31 (1990). This does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005). Rather, it means that the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified. *Id.*

When the police receive information from an informant, the totality of the circumstances includes the veracity and reliability of the informant and the informant's information, as well as the basis for the informant's knowledge. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). An anonymous tip alone will rarely establish the level of reasonable suspicion required to justify a detention. *Florida v. J.L.*, 529 U.S. 266, 270 (2000); *White*, 496 U.S. at 329. There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *Pipkin v. State*, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.).

3

A tip from an informant may exhibit sufficient indicia of reliability to justify a detention when the informant has placed himself in a position to be easily identified and held responsible for the information provided. *See, e.g.*, *Hawes v. State*, 125 S.W.3d 535, 540 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *State v. Fudge*, 42 S.W.3d 226, 232 (Tex. App.—Austin 2001, no pet.); *State v. Garcia*, 25 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd). An informant's tip also exhibits sufficient indicia of reliability when information is given to the police in a face-to-face manner, such that the informant's identity is revealed. *See Fudge*, 42 S.W.3d at 232; *Garcia*, 25 S.W.3d at 913; *Sailo*, 910 S.W.2d at 188.

Here, police received a dispatch based on a 911 call. The 911 caller reported fighting outside a residence on Holliday Court. Although there is no indication in the record that the 911 caller identified himself, police had a callback number, which, Officer Rodriguez testified, could be used to identify the caller, and the trial court made a finding of fact to that effect. *See Carmouche*, 10 S.W.3d at 327-28; *Guzman*, 955 S.W.2d at 89-90 (trial court's findings of fact are given "almost total deference"). Moreover, when Officer Rodriguez arrived on the scene, he spoke with witnesses, who also reported fighting. Officer Rodriguez explained that, when he arrived:

> there was no disturbance. I arrived on the scene within three minutes and there was no more disturbance. There was [sic] people outside of a residence and I was—as I was driving by, I observed a truck about 100 feet north. I arrived, I saw that there was no fight and I asked them, hey, is anybody fighting here, and they said, no. The people in that truck that you just went past were the ones fighting.

4

The 911 call, the statements of the witnesses at the scene, and Officer Oldham's own rational inferences were sufficient to create reasonable suspicion that a crime had been committed. Information received from both the 911 caller and the witnesses at the scene exhibited sufficient indicia of reliability. The 911 caller who reported the fighting could have been identified based on the call-back number. *See Hawes*, 125 S.W.3d at 540; *Fudge*, 42 S.W.3d at 232; *Garcia*, 25 S.W.3d at 913; *Sailo*, 910 S.W.2d at 188. When Officer Rodriguez arrived on the scene, witnesses confirmed in face-to-face questioning that fighting had occurred and that the persons involved had left in the tan or gold truck that Officer Rodriguez had observed leaving the scene as he arrived. *See Fudge*, 42 S.W.3d at 232; *Garcia*, 25 S.W.3d at 913; *Sailo*, 910 S.W.2d at 188.

These reports were supported by Officer Oldham's own observations. Within minutes of the dispatch, Officer Oldham also observed a gold truck near the scene and confirmed with Officer Rodriguez that the truck in question was an extended cab. Given that, as Officer Oldham testified, "around 3:00 o'clock in the morning, there's not a whole lot of traffic," it was reasonable for Officer Oldham to assume that the gold extended-cab truck he observed near the scene was the same truck that had recently left the scene.

Brand argues that, even if the reports of a fight were reliable, there was no evidence that the fighting had become violent and, therefore, Officer Oldham did not have reasonable suspicion that any crime had been committed. Given the circumstances, however, including the necessity of a 911 call and the crowd outside, Officer Oldham could have inferred that the fighting had been violent or would become violent. Even assuming no violence or impending violence, the conduct reported by the various witnesses at least amounted to disorderly conduct, a

5

Class C misdemeanor.  *See* Tex. Penal Code Ann. § 42.01(a)(6) (West Supp. 2009) ("[a] person commits an offense if he intentionally or knowingly . . . fights with another in a public place").

Brand relies on *State v. Simmang*, 945 S.W.2d 219 (Tex. App.—San Antonio 1997, no pet.), as analogous to this case.  In *Simmang*, an investigative detention was conducted based on an anonymous tip that a white male was masturbating in a gold-colored, four-door sedan located in a parking lot at Crestway and Randolph.  *See id.* at 220.  When police arrived at the parking lot, they observed a white male in a gold-colored car.  *See id.*  Police then blocked the car and testified that, at that point, they considered the man in detention.  *See id.* at 221.  The San Antonio court held that the detention was unlawful, explaining that the detention was based on "the unsubstantiated suspicions of an anonymous caller of an unknown reliability and without specific and articulable facts to justify the stop."  *Id.* at 224.  In *Simmang*, however, unlike in the instant case, the stop was based solely on an anonymous 911 call.  There was no evidence or finding that the caller could have been identified, and there was no other evidence from which officers could have inferred that a crime had been or would be committed.  Here, as discussed, the totality of the circumstances include an identifiable 911 caller, statements from witnesses at the scene, and observations of dispatched officers.  Unlike in *Simmang*, the totality of the circumstances here created reasonable suspicion that a crime had been or would be committed.  *See Woods*, 956 S.W.2d at 38; *Hernandez*, 983 S.W.2d at 869.

6

We overrule Brand's point of error and affirm the judgment of the trial court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   January 22, 2010

Do Not Publish