RECEIVED IN
COURT OF CRIMINAL APPEALS

February 26, 2015

ABEL ACOSTA, CLERK

CAUSE NUMBER _____

**IN THE TEXAS COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS**

---

**No. 13-14-00287-CR
IN THE COURT OF APPEALS FOR THE
THIRTEENTH DISTRICT OF TEXAS AT CORPUS CHRISTI**

**CHRIS FURR,**
**Appellant**

**VS.**

**THE STATE OF TEXAS,**
**Appellee**

---

**PETITION FOR DISCRETIONARY REVIEW
FOR APPELLANT CHRIS FURR**

---

**TRAVIS BERRY**
**Attorney for Appellant**
**Texas Bar No. 24059194**
**P.O. Box 6333**
**Corpus Christi, Texas 78466**
**Telephone: (361) 673-5611**
**Facsimile: (361) 442-2562**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i.

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii.

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTION PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

> Whether the Court of Appeals erred in holding that, under its view of *Florida v. J.L.*, 529 U.S. 266, 272 (2000), an anonymous tip that a unidentified pedestrian is doing drugs near a homeless shelter, without more, is sufficient to justify a police officer's stop and frisk of a pedestrian the police find near that location?

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT IN SUPPORT OF GROUNDS FOR REVIEW . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

**CASES**                                                                   **PAGE**

*Adams v. Williams*, 407 U.S. 143 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Alabama v. White*, 496 U.S. 325 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 16

*Brown v. Texas*, 443 U.S. 47 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14

*Florida v. J.L.*, 529 U.S. 266 (2000) . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 10, 15-17

*Maryland v. Buie*, 494 U.S. 325, 331-32 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Navarette v. California*, 134 S. Ct. 1683, 572 U.S. ____ (2014) . . . . . . . . . . . . . 15

*State v. Simmang*, 945 S.W. 2d 219 (Tex. App. - San Antonio 1997) . . . . . . . . . 9

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5-7, 10, 14-17

*United States v. Sokolow*, 490 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ybarra v. Illinois*, 444 U.S. 85 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES AND RULES**                                                       **PAGE**

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9-14, 16-19

Tex. R. App. P. 66.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

## STATEMENT REGARDING ORAL ARGUMENT

In the event this petition is granted, Appellant requests oral argument. Oral argument would assist to resolve whether the police activity in this case - responding to an anonymous telephone call and not corroborating any of the alleged illegal activity before seizing and searching the nearest pedestrians - was reasonable under *Florida v. J.L.* and authorized by the Fourth Amendment.

## STATEMENT OF THE CASE

Appellant, Christopher Furr, was accused by indictment on February 27, 2014, of possession of heroin, less than one gram, a state jail felony. (CR4) Appellant filed a motion to suppress evidence which was denied by the trial court on April 28, 2014. (CR 6, RR 24, 40) Appellant reserved his right to appeal the ruling of the trial court denying his motion to suppress evidence. (CR 24)

On June 17, 2013, appellant entered a plea of guilty to the indictment and received two (2) years confinement in the State Jail Division of the Texas Department of Criminal Justice which was probated for a term of three (3) years community supervision. (CR 49, 51) Appellant filed his timely notice of appeal on April 30, 2014, to appeal the trial court's denial of his motion to suppress evidence. (CR 42)

1

## STATEMENT OF PROCEDURAL HISTORY

In an unpublished opinion delivered January 22, 2015, a panel of the Thirteenth Court of Appeals affirmed the judgement of the trial court. No motion for rehearing has been filed.

Appellant now files his petition for discretionary review pursuant Rule 68 of the Texas Rules of Appellate Procedure.

## GROUNDS FOR REVIEW

The Court of Appeals' decision has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States. Tex. R. App. P. 66.3(c)

## QUESTION PRESENTED FOR REVIEW

Whether the Court of Appeals erred in holding that, under its view of *Florida v. J.L.*, 529 U.S. 266, 272 (2000), an anonymous tip that a unidentified pedestrian is doing drugs near a homeless shelter, without more, is sufficient to justify a police officer's stop and frisk of a pedestrian the police find near that location?

## STATEMENT OF FACTS

On August 28, 2012, in Corpus Christi, Texas, an anonymous person

2

called the police that two males were using drugs. The unknown tipster described the men as white with one wearing all black and the other with a black t-shirt. Shortly after the tip was received, one officer arrived at the specified location (Mother Theresa homeless shelter) and observed two white males. The officer did not see the individuals engage in suspicious behavior and could not verify the anonymous tip that any sort of criminal activity was occurring. (RR 33-34)

The first officer (Alvarez) immediately approached a "Collier"and detained him. After detaining "Collier", Alvarez and a second officer (Ayala) continued to search for a second white male. Appellant is a white male that they found inside the homeless shelter, detained him, and searched him with admittedly no corroboration of any wrongdoing afoot pursuant to a *Terry* frisk.

Both officers testified at the hearing on appellant's motion to suppress.

### Officer Alvarez

Officer Alvarez was the officer who first arrived on the scene where the tipster alleged "drug use" was occurring. He testified that he received a call from police dispatch about two subjects near the Mother Theresa homeless shelter located at 513 Sam Rankin Drive, Corpus Christi, Texas, and discovered a white male wearing all black and another white male wearing a black shirt with a brown backpack. (RR 27-28) When asked if he recognized one of those individuals in the

3

courtroom, the officer could not remember what they looked like. (RR 28)

Officer Alvarez testified that he made contact with a white male named "Collier" who matched the description of one of the subjects, and that another white male subject continued on to the Mother Theresa shelter. (RR 29) The officer could not remember whether the subject was in a hurry or not but that he looked over his shoulder at some point. After detaining Collier, Officer Alvarez testified that he and Officer Ayala entered the shelter to search for the other individual who was detained by Ayala. (RR 30-31)

On cross-examination, Officer Alvarez testified that he was working from some anonymous tip and had no idea if that information was reliable. (RR 32) The anonymous tip did not describe any information in detail, just that two individuals were "using drugs". Officer Alvarez admitted that these two individuals were not committing any crime upon his arrival and he could not verify the anonymous tip that any sort of criminal activity was occurring. (RR 33-34) Upon contact with the subjects, the officer did not see any drugs in plain view but the subjects fit the description of the anonymous tip.

Officer Alvarez admitted that Appellant had the right to walk towards the shelter but he and Officer Ayala still proceeded to make contact with Appellant at the shelter wherein Appellant was not seen committing any sort of crime. (RR 34-

4

35) The basis of the *Terry* frisk then became the focus of the cross-examination:

Defense: When Mr. Furr walked away, at that point, did he have, a right to walk away from you?

Officer: He could have.

Defense: Okay. Did you follow him, yourself, or was that solely Sgt. Ayala?

Officer: Both of us followed him.

Defense: Okay. And you proceeded to make contact with him, is that correct?

Officer: Yes.

Defense: At that point in time, did you observe Mr. Furr committing any sort of crime?

Officer: No.

Defense: Any reason to believe he had any weapons on him?

Officer: There's always a reason to believe that a subject has weapons on him.

Defense: Any subject?

Officer: Yes. When you make contact on the street with any subject, there's a reasonable suspicion that they might have weapons on them. That's why we do the Terry frisk.

Defense: So you do a Terry frisk every single time there's a call on somebody because that's your procedure?

Officer: If there's a -- that nature of call, yes.
Defense: Even if you have no information to go off of that the individual's armed and dangerous?

Officer: Yes. (RR 35)

5

Officer Alvarez concluded his testimony by agreeing with the defense that he had no reason to believe Appellant had any weapons or was involved in any criminal activity other than receiving an anonymous call. (RR 36-37)

**Officer Ayala**

Officer Ayala testified that he was on patrol on August 28, 2012, when he received an anonymous telephone call that two males were using drugs at a specific address. (RR 6) Officer Ayala testified that upon arrival to that address, Officer Alvarez had already detained two males, one named "Collier". Officer Ayala testified that there was another male, Christopher Furr, near the scene who was walking away "furtive, like was trying to get away", and was looking over his shoulder. (RR 7) He testified that he followed Appellant into the Mother Theresa shelter which was "twenty, thirty yards" from where Mr. Collier had been detained. Officer Ayala testified that upon contact with Appellant, he was acting suspicious because he seemed "anxious"  "nervous" was sweating, and that Appellant was "trying to be evasive and avoid us." (RR 8-9)

Officer Ayala testified about the subsequent *Terry* frisk to pat down Appellant for weapons wherein he felt what he believed to be a crack pipe in the right front pocket. (RR 9) Officer Ayala proceeded to remove the contents of

6

Appellant's pockets which was two syringes and a glass crack pipe and formed the officer's probable cause to arrest Appellant. (RR 10) After advising Appellant that he was under arrest for drug paraphernalia, Officer Ayala removed Appellant's wallet, searched it, and found balloons believed to contain heroin. (RR 11-12) Officer Ayala testified that at the time he removed Appellant's wallet and searched through it that Appellant was not free to leave due to the paraphernalia. (RR13)

On cross examination, Officer Ayala testified that he did not hear the actual anonymous telephone call, did not know the identity of the caller, did not know if the caller had seen any drugs or any drug sales or any weapons, just that two individuals were using drugs. (RR 15) Officer Ayala then testified, contrary to his testimony on direct, that he did not actually see Appellant "walking away, making furtive movements" but that he was told this by Officer Alvarez upon arrival. Officer Ayala admitted that he was not aware of any crime being committed by Appellant and that he had the right to walk away from the detention of Collier. (RR 15-16) Officer Ayala testified that he proceeded to follow Appellant because he "fit the description of the individuals on the call" and to make contact to find out if illegal activity was occurring and do a *Terry* frisk for officer safety. (RR 16-19)

Officer Ayala was then asked by defense counsel,

"So Blow Joe down the street can call and say your fellow -- I don't know -- your daughter-in-law has drugs on her or somebody or your neighbor's got some drugs on him, you make contact with them, you're going to pat them down because that's your procedure, if they appear nervous?" (RR 20)

Officer Ayala testified in the affirmative, that any anonymous information that someone has drugs will create cause to search nearby individuals if they appear nervous. Officer Ayala added that the area where the call was taking place must be taken into consideration as it was a "high crime area". (RR 20-21)

The trial court initially denied Appellant's motion but upon learning that there was another officer involved who was present to testify, the trial court stated it might "un-deny" the motion to suppress and brought in that officer to testify. (RR 24-25)

**Argument on Suppression**

The State argued that the evidence showed that the officers had reasonable suspicion to approach both subjects which turned into probable cause to arrest when "hard objects" were found in Appellant's pocket. The State concluded that the heroin was admissible since it was found while Appellant was under arrest. (RR 37)

The Defense argued that under *Florida v. JL*, 529 U.S. 266 (2000):

"an anonymous tip in and of itself is insufficient to justify a stop and a frisk.

8

Especially, in one particular case, it was a tip that a person was carrying a gun, a weapon, at that point. And when they were unable to verify that information, just because there's an accurate description of what they were wearing or some non-illegal activity is not enough to justify a stop and frisk. (RR 38)

The defense further argued that under *State v. Simmang*, 945 S.W. 2d 219

(Tex. App. - San Antonio 1997):

"an anonymous caller..... without specific and articulable facts to justify the stop, the evidence had to be suppressed as fruit of an unlawful detention, when they were based on the basis of unsubstantiated suspicions of an anonymous caller of an unknown reliability without specific, articulable facts, which is exactly this case here. They didn't point to anything specific as far as any sort of drug transactions, only what they were wearing."

The defense's final argument in support of suppression was upon a lack of

information provided to the police and a lack of reasonable suspicion:

"They (officers) both admitted that there was no reason to believe any sort of crime was being committed or that Appellant had any weapons on him. And they both testified that it's their procedure to go up and pat-down anybody that they approach, which is, unfortunately, not the law or, fortunately, not the law. We have a Fourth Amendment protection against that. They have to meet certain qualifications in order to do a stop and frisk and pat-down. There has to be reasonable suspicion that the person is armed and dangerous. The officers have to feel threatened. They can't just go and pat-down anybody, especially when it's based on an anonymous tip. In this instance, the anonymous tip didn't even verify any sort of illegal activity. They didn't even see anything. If they saw Mr. Furr with some drugs in plain view or completing a drug transaction, that's completely different, but they didn't. They got a call from an anonymous person, went up to some people and stopped and searched them and found narcotics. And the Fourth Amendment exactly protects against just that, and for that reason should be suppressed.

9

The trial court denied the defendant's motion to suppress which formed the basis of this appeal.

## QUESTION PRESENTED FOR REVIEW RESTATED

Whether the Court of Appeals erred in holding that, under its view of *Florida v. J.L.*, 529 U.S. 266 (2000), an anonymous tip that a unidentified pedestrian is doing drugs near a homeless shelter, without more, is sufficient to justify a police officer's stop and frisk of a pedestrian the police find near that location?

## ARGUMENT

**I.     ACCORDING TO THE SUPREME COURT'S PRECEDENTS, AN UNRELIABLE, UNCORROBORATED ANONYMOUS TIP CANNOT FURNISH THE INDIVIDUALIZED REASONABLE SUSPICION REQUIRED FOR A STOP AND FRISK**

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Court decided that while a stop is a seizure and a frisk is a search, *id.* at 16, both can be reasonable on less than probable cause. *Id.* at 20-21, 24-27. The Court, however, rejected the argument that mere "suspicion" could support a stop and frisk. See *id.* at 21-22. Instead, because a "demand for specificity . . . is the central teaching of . . . Fourth

Amendment jurisprudence," id. at 21 n.18, an officer must "be able to point to specific and articulable facts which . . . reasonably warrant [the] intrusion[s]" effected by a stop and frisk. *Id*. at 21. The facts, "judged against an objective standard," must be sufficient to " 'warrant a man of reasonable caution in the belief' "that a stop and frisk is warranted. *Id*. at 21-22. Official authority to search and seize based on "subjective good faith," "inchoate or unparticularized suspicion," or "inarticulate hunches" would result in the "evaporation" of Fourth Amendment rights and would leave us " 'secure in [our] persons, houses, papers, and effects,' only in the discretion of the police." *Id.* at 22. Consequently, a stop and a frisk are constitutional only when an officer has information that "leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." *Id.* at 30.(3)

In subsequent cases, the Court has labeled the requisite showing a "reasonable suspicion." See *Brown v. Texas*, 443 U.S. 47, 51 (1979). A reasonable suspicion of criminal activity is required for a detention, *id*., while a reasonable suspicion that a detained person is armed and dangerous is needed to sustain a frisk. *Maryland v. Buie*, 494 U.S. 325, 331-32 (1990). Consistently, the Court has mandated an individualized showing of articulable, objective facts that give rise to

a sufficient likelihood that a particular stop and frisk will serve "society's legitimate interests" in crime prevention and community safety. See *Brown*, 443 U.S. at 51; see also *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979).

*Alabama v. White*, 496 U.S. 325 (1990), makes it patently clear that the stop and the frisk in this case were not based on a reasonable suspicion that the respondent was involved in crime, was armed, or was dangerous. *Alabama v. White* holds that when an anonymous tip is the basis for official action, the Constitution requires significant corroboration indicative of a reliable basis of knowledge and veracity. Because it did not include a significant corroboration, the record would show that the police did not establish a reasonable suspicion that Appellant was involved in any illegal activity.

*Alabama v. White* also held that if officers wish to rely on an accusation leveled by an anonymous source alone, they must have cognizable reasons to credit the reliability and honesty of the informant. If a tip contains "a range of details," if those details include "predictions of future behavior," and if those predictions are "corroborated," the informant's report of criminal activity will just clear the Fourth Amendment bar.

The tip in this case falls woefully short in every respect. It contained no detailed information, but merely stated general facts that white males were

12

standing around a homeless shelter and were wearing certain clothing and were believed to be engaging in drug activity. More important, the minimal information that was corroborated pertained to "condition[s] presumably existing at the time of the" tip. *Id.* at 332. The condition in the instant case was that of persons loitering around a homeless shelter.

There was no indication from the record that the tipster had a reliable way of knowing about any illegal activity or was telling the truth about the alleged drug activity. The facts of the instant case - one devoid of all the "important" factors relied on in *White* - fall well short of establishing a reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989) Without " '[s]omething more,'"[1] a forcible stop and frisk were not justified.

## II. A BALANCING OF RELEVANT FOURTH AMENDMENT INTERESTS DICTATES THE CONCLUSION THAT THE STOP AND FRISK OF APPELLANT WAS UNREASONABLE

The reasonableness of a search or seizure depends upon a balancing of the intrusion on the individual against the government interests served by the

---

[1] *Adams v. Williams*, 407 U.S. 143 (1972)

intrusion. See *Terry v. Ohio*, 392 U.S. 1, 21 (1968); see also *Brown v. Texas*, 443 U.S. 47, 50 (1979) . The balance in this case dictates the same conclusion that the common law and controlling precedents mandate-that the stop and the frisk of Appellant was unreasonable.

*Terry* recognized that stops and frisks intrude severely upon individuals' interests in personal liberty, privacy, and dignity. And "emphatically rejected th[e] notion" that they were not Fourth Amendment "seizures." When an officer "accosts an individual and restrains his freedom to walk away, he has 'seized' that person," *Terry*, 392 U.S. at 16, and only a "reasonable suspicion" of criminal activity can counterbalance the serious loss of liberty. *Id*. at 30.

Upon contact by the police, Appellant was asked whether he had any weapons. The interests in securing an illegal firearm and in protecting officers and others from an armed, dangerous person are powerful and legitimate in nature. The problem, however, is that there was no showing that the officer's action would advance these important public interests to a sufficient degree. The unsubstantiated, anonymous tip did not establish a sufficient likelihood that a stop and frisk would promote public safety. A bare-bones tip with minimal corroboration falls well short of establishing a reasonable suspicion because it does not give rise to a constitutionally adequate probability that a search and

seizure will promote the government's interests.

Keep this in mind when reviewing the Court of Appeals opinion (page 11) and its' characterization of the anonymous tip in this case:

> Here, the anonymous tip merely described the suspects' location, the color of their skin, and the color of some of their clothing. In contrast with the tip in *Matthews*[2], the tip at issue here <u>failed to describe the physical characteristics of either suspect beyond skin color; failed to identify either suspect by name; failed to describe any vehicle in which the suspects could be found; and failed to specify the type of drugs allegedly being used. Moreover, the tip did not indicate that the tipster had knowledge of the suspects' future behavior</u>, cf. White, 496 U.S. at 332 (noting that "the caller's ability to predict respondent's future behavior . . . demonstrated inside information—a special familiarity with respondent's affairs" and was thus indicative of reliability), nor did the tip contain any indication that it was reported contemporaneously with the alleged offense. Cf. *Navarette v. California*, 134 S. Ct. 1683, 1689 (U.S. 2014) (noting that "statements about an event and made soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation" (citation omitted)). <u>The tip at issue here was vague and undetailed. The fact that the suspects matched the description provided by the tipster is therefore less indicative of the tip's credibility here than it was in *Matthews*.</u>

Privacy interests in this case - and others like it - are insufficiently weighty to outweigh the severe intrusions on personal freedom, privacy, and dignity allowed by the Court of Appeals, especially in the face of its own admissions of

---

[2] *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) - [a]n anonymous tip alone is seldom sufficient to establish reasonable suspicion. Reasonable suspicion is dependent not only on the content of the information possessed by law enforcement, but also on its reliability. To support reasonable suspicion, an anonymous tip requires some indicia that the caller is credible or that his information is reliable.

15

the multitude of deficiencies with the anonymous tip.

The Court of Appeals also points out factual deficiencies in the tip:

> Here, the only "specific and articulable facts" regarding suspicious behavior engaged in by Furr before he was stopped by Ayala—according to the evidence viewed in the light most favorable to the trial court's ruling, see Dixon, 206 S.W.3d at 590—were **(1)** looking over his shoulder while he walked away from Alvarez when Alvarez was talking to Collier, **(2)** appearing "nervous" and "out of it" and "sweating" prior to the frisk, and **(3)** failing to "respond initially" when Ayala asked if he was carrying a weapon. That Furr looked back at Alvarez when he walked away is not indicative of imminent criminal activity and is not "sufficiently distinguishable" from the behavior in which an innocent person would have engaged.[3]

The Court of Appeals reasoning that Appellant's actions were not "indicative of imminent criminal activity" was correct yet the Court failed to act accordingly. Appellant argues the deficiencies pointed out by the Court of Appeals are why the United States Supreme Court has expressed a well-founded skepticism of anonymous tips in a more recent case. In *Navarette v. California*, 134 S. Ct. 1683, 572 U.S. ____ (2014), the Court held that anonymous informants cannot be held responsible for false assertions of illegal conduct and are therefore free to lie with impunity, putting innocent people at risk of unreasonable, intrusive searches and seizures.

---

[3] *Wade v. State*, 422 S.W.3d 661, 670 (Tex. Crim. App. 2013).

The tip in this case lacked sufficient indicia of reliability to provide reasonable suspicion to make a *Terry* stop as it provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. See *Alabama v. White*, 496 U.S. 325, 327 (1990).

In *Florida v. J.L.*, 529 U.S. 266 (2000), the Court further held that corroboration of innocent, readily observable facts contained in a tip does not satisfy the Fourth Amendment. "The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272.

*Florida v. J.L.* dealt with an anonymous tip that someone was carrying a weapon. In *J.L.*, the officers' suspicion that *J.L.* was carrying a weapon arose not from their own observations but solely from a call made from an unknown location by an unknown caller. The Supreme Court held that the tip lacked sufficient indicia of reliability to provide reasonable suspicion to make a *Terry* stop as it provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. See *Alabama v. White*, 496 U. S. 325, 327.

The relief sought by Appellant was very similar to the relief sought by the defendant in *Florida v. J.L.*. The Court of Appeals erroneously approved the

17

detention and search of Appellant in this case even though, as in *J.L.*, the officers made the stop based on information provided by an anonymous tipster that, except for the fact that while males were present outside a homeless shelter, the officers did not corroborate. Without that corroboration, the officers lacked the reasonable suspicion necessary to detain and search a pedestrian.

The famous reasonable suspicion standard in *Terry v. Ohio*, 392 U.S. 1 (1968), came from a suspect expertly "casing" a business to rob. The imminent armed robbery in officer's experienced opinion in *Terry*, is a much more "reasonable" suspicion than the officer's had in the instant case and is why the police action in *Terry v. Ohio* was not violative of the Fourth Amendment.

A person in temperate South Texas who is perspiring, staying at a homeless shelter, and being "kinda out of it", is no where near a reasonable enough suspicion that this person was about to commit a crime under *Terry*. In *J.L.*, the police were looking for a black male allegedly with a weapon. When the officer saw three black males, he stopped and frisked *J.L.* and discovered a weapon. Here, the same scenario is at hand except the subjects at the anonymous tipster's location were white and were suspected of having drugs.

The Florida Supreme Court agreed with *J.L.*'s contention that his Fourth Amendment rights had been violated because the facts known to the officers did

not give rise to a "reasonable suspicion.". *J.L. v. State*, 727 So.2d 204, 209 (Fla. 1998) This position was joined in a unanimous decision by United States Supreme Court. *Florida v. J.L.*, 529 U.S. 266 (2000)

## CONCLUSION

An anonymous tip that a person is doing drugs, without more, is not sufficient to justify a police officer's stop and frisk of persons near that area. Approval of a stop and frisk based on an allegation that an unknown, unidentified person has asserted, that an individual at a particular location wearing certain clothing has something illegal would generate enormous risks of questionable law enforcement.

A showing of cause that is so minimal and that can be fabricated so easily by any anonymous caller provides an avenue for anyone to create criminal liability upon whomever they wish and affords officers so much discretion it literally invites arbitrary law enforcement.

The Court of Appeals has decided this important Fourth Amendment question in a way that conflicts with the applicable decisions of the Supreme Court of the United States.

## PRAYER

For the reasons stated above, the judgment of the Court of Appeals should

19

be reversed, a suppression of the evidence be ordered, and the case remanded for a new trial.

Respectfully submitted,

/s/ *Travis Berry*
Travis Berry
Texas Bar No. 24059194
P.O. Box 6333
Corpus Christi, Texas 78466
Telephone: (361) 673-5611
Facsimile: (361) 442-2562
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of appellant's Petition has been delivered via email and via U.S. Mail to Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711-3046, and delivered via email to the Nueces County District Attorney, 901 Leopard, Corpus Christi, Texas, and to Appellant Chris Furr, Nueces County Jail, SID: 10121653, Corpus Christi, Texas 78403, on this February 20, 2015.

/s/ *Travis Berry*
Travis Berry

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the undersigned certifies this Petition for Discretionary Review complies with the type-volume limitations announced in Rule 9.4(i)(2)(D) of the Texas Rules of Appellate Procedure.

1.    The undersigned certifies that the Petition for Discretionary Review contains no more than **4,409** words in proportionately spaced typeface, an amount of words within the limits set forth in Rule 9.4(i)(2)(D)

2.    The brief has been prepared in proportionately spaced typeface using WordPerfect 12 in 14 pt. Times New Roman. Footnotes are used in this Petition for Discretionary Review on five occasions. Their text has been included and accounted for in the above word count.

3.    The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits states in Rule 9.4(i)(2)(D) of the Texas Rules of Appellate Procedure, may result in the Court striking the Petition.

/s/ *Travis Berry*
Travis Berry

APPENDIX:

JUDGEMENT AND OPINION FROM THIRTEENTH
COURT OF APPEALS



**NUMBER 13-14-00287-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CHRIS FURR,**                                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                          **Appellee.**

---

### On appeal from the 214th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Garza**

Appellant, Chris Furr, pleaded guilty to possession of less than one gram of heroin, a state jail felony, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West, Westlaw through 2013 3d C.S.), and was sentenced to two years' imprisonment, with the sentence suspended and Furr placed on community supervision for three years.  Furr argues on

appeal that the trial court erred by denying a pre-trial motion to suppress evidence. We affirm.

## I. BACKGROUND

Furr's motion requested suppression of all evidence obtained "as the result of an illegal traffic stop, arrest, or search in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article 1, Sections 9, 10, [and] 19 of the Texas Constitution, [and] Articles 1.04, 1.05, 1.06, and 38.23 of the Texas Code of Criminal Procedure."

At the suppression hearing, Sergeant Mike Ayala of the Corpus Christi Police Department testified that he was on patrol at around 2:00 p.m. on August 28, 2012, when he was advised of an anonymous report of "two males using drugs" near 513 Sam Rankin Street, which Ayala testified is a known "high crime, high drug" area. He stated that Officer George Alvarez had already located the subjects at the time he arrived at the scene. The following colloquy occurred:

| | | |
|---|---|---|
| Q. [Prosecutor] | | Once you arrived to back him up, what did you and Officer Alvarez do? |
| A. [Ayala] | | Officer Alvarez was making contact with a—an individual by the name of Collier. |
| | . . . . | |
| Q. | | Did you hear the call that Officer Alvarez was out on? |
| A. | | Yes, sir. |
| Q. | | And was this gentleman that he was talking to of the same description that came over the call? |
| A. | | Yes, sir. |
| Q. | | Were there two individuals involved? |
| A. | | Two individuals. |

2

Q. And who was there besides Mr. Collier, the defendant, the co-defendant in this case?

A. The—the other individual was Christopher Furr, but he had walked away from Officer Alvarez.

Q. Was there anything unusual about the way he walked away?

A. Yes, it was kind of furtive, like he was trying to get away.

Q. Did he glance back to see if the police were following him, things like that?

A. He—he kept looking over his shoulder.

Q. And where did Mr.—where did the Defendant go as he walked away?

A. He walked into that Mother Teresa shelter building.

The officers followed Furr into the Mother Teresa Shelter, which was about twenty or thirty yards away. Ayala contacted Furr in the "yard" of the shelter. According to Ayala, when he approached Furr, Furr "was acting kind of suspicious, kind of anxious, nervous, sweating, like he was trying to be evasive and avoid us." Ayala explained that he then conducted a pat-down to ensure that Furr was not armed. In conducting the pat-down, Ayala felt something in Furr's right front pocket which Ayala knew from experience to be a crack pipe. Ayala removed the pipe along with two syringes from Furr's pocket. Ayala stated that, at this point, Furr was under arrest for possession of drug paraphernalia. Ayala then asked Furr for identification, and Furr said that it was in his wallet. Ayala opened Furr's wallet and observed "two small little balloons" which Ayala believed contained heroin.

On cross-examination, Ayala conceded that he did not hear the initial report of drug activity; he did not know the identity of the individual that provided the tip; and he did not know if the informant saw a drug transaction or if the informant even saw any drugs at all.

3

The only information provided to Ayala was that there were two individuals using drugs at that specific location, along with a description of the individuals. Ayala stated that Furr met the description of one of the individuals allegedly using drugs. Ayala acknowledged that there was no report that the alleged drug users were armed or dangerous. He further clarified that he did not actually witness Furr "walk[] away furtively" but was rather informed of that by Alvarez. He did not see Furr commit any crimes, but decided to follow him because "he fit the description of the individuals on the call." He clarified that the tipster had given a description only of the suspect's clothing, not of the suspect's physical characteristics. Ayala denied that he felt threatened or afraid, but he conducted the pat-down because "I'm not going to take a chance with someone that's supposedly using drugs." Ayala testified that, when he asked Furr if he was carrying a weapon, Furr "didn't respond initially" but "was just kind of out of it" and "looked like he was under the influence of a drug."[1]

Alvarez testified that he was on patrol on the day and time in question. He was advised of "two subjects"—one was a white male wearing all black, and the other was a white male wearing a black shirt and a brown backpack. Alvarez approached Collier, who matched one of the descriptions. At the time, Furr was not close to Alvarez but rather "continued into the area of the—the shelter." Alvarez stated that, initially, Furr and Collier were "walking together." He stated: "I passed them and I—since they fit the description, I looked back in the mirror and I saw them looking back." According to Alvarez, Furr then "went into the shelter area." Alvarez could not remember if Furr "hurried" into the shelter

---

[1] After hearing Ayala's testimony, the trial court announced that the motion to suppress was going to be denied. After being advised that the other officer was present and ready to testify, the trial court stated, "Bring him in then. I'll deny—maybe undeny it."

4

area but he agreed that Furr looked back over his shoulder as he went there. Alvarez could not recall whether Furr appeared to be under the influence of alcohol or any other substance. Ayala then arrived at the scene to provide backup. Alvarez observed Ayala pat down and arrest Furr.

Like Ayala, Alvarez conceded on cross-examination that he did not know the identity of the individual that provided the tip. The tip merely referenced two individuals "using drugs"; it did not indicate what kind of drugs were being used or that a transaction was taking place. Alvarez himself observed no crimes taking place, nor did he observe any drugs in plain sight. Alvarez conceded that, at the time Furr walked away, he had the right to do so. Alvarez further testified:

| Q. [Defense counsel] | Any reason to believe he had any weapons on him? |
|---|---|
| A. [Alvarez] | There's always a reason to believe that a subject has weapons on him. |
| Q. | Any subject? |
| A. | Yes. When you make contact on the street with any subject, there's a reasonable suspicion that they might have weapons on them. That's why we do the Terry frisk.[2] |
| Q. | So you do a Terry frisk every single time there's a call on somebody because that's your procedure? |
| A. | If there's a—that nature of call, yes. |
| Q. | Even if you have no information to go off of that the individual's armed and dangerous? |
| A. | Yes. |

Alvarez agreed with defense counsel that he "didn't have any reason to believe [Furr] had

---

[2] *See Terry v. Ohio*, 392 U.S. 1 (1968); *infra* section II.B.

5

any weapons on him or that he was involved in any sort of criminal activity other than [the] anonymous call."

The trial court denied the motion to suppress. Furr later pleaded guilty and was convicted and sentenced. The trial court certified Furr's right to appeal. *See* TEX. R. APP. P. 25.2(d).

## II. DISCUSSION

### A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

We review the trial court's decision for an abuse of discretion. *Id.* "We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). The trial court's ruling will be upheld if it "is reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Therefore, the question of whether a given set of historical facts gives rise to reasonable suspicion is reviewed de novo. *Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013).

6

When, as here, no findings of fact or conclusions of law are filed, we assume the trial court made all findings in support of its ruling that are consistent with the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000); *cf. Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013) (holding that, when the issue is voluntariness of a confession, a trial court must file findings of fact and conclusions of law "whether or not the defendant objects to the absence of such omitted filing").

## B. Applicable Law

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. "[E]vidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America" is inadmissible in a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2013 3d C.S.).

In *Terry v. Ohio*, the United States Supreme Court held:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

392 U.S. 1, 30–31 (1968); *see Wade*, 422 S.W.3d at 669 ("If an officer is justified in believing that a person whose suspicious behavior he is investigating is armed, he may

7

frisk that person to determine if the suspect is, in fact, carrying a weapon and, if so, to neutralize the threat of physical harm.").

Under the Fourth Amendment, a brief investigative detention is authorized once an officer has a reasonable suspicion to believe that an individual is involved in criminal activity.[3] *Carmouche*, 10 S.W.3d at 329. "However, the 'exigencies' which permit the additional *search* are generated strictly by a concern for the safety of the officers." *Id.* (citing *Terry*, 392 U.S. at 25–26, 29 ("The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer")); *see Wade*, 422 S.W.3d at 669 ("The purpose of a *Terry* frisk is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."). Therefore, contrary to the testimony of the officers in this case, "the additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon." *Carmouche*, 10 S.W.3d at 329 (citing *Terry*, 392 U.S. at 26–27; *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991)); *see Wade*, 422 S.W.3d at 669 ("[P]olice may not escalate a consensual encounter into a protective frisk without reasonable suspicion that the person

---

[3] In considering whether police may temporarily detain a suspect for questioning, courts have held that "[a] police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Id.* "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.* "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Derichsweiler*, 348 S.W.3d at 914.

(1) has committed, is committing, or is about to commit a criminal offense and (2) is armed and dangerous.").

The Texas Court of Criminal Appeals has observed that

> [a]n anonymous tip alone is seldom sufficient to establish reasonable suspicion. Reasonable suspicion is dependent not only on the content of the information possessed by law enforcement, but also on its reliability. To support reasonable suspicion, an anonymous tip requires some indicia that the caller is credible or that his information is reliable.

*Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (citing *Alabama v. White*, 496 U.S. 325, 329 (1990)). "An inverse relationship exists between the reliability of the informant and the amount of corroborated information required to justify the police intrusion; the less reliable the tip, the more information is needed." *Martinez*, 348 S.W.3d at 923. Further, in *Florida v. J.L.*, the United States Supreme Court held that, in anonymous tip cases, the indicia of reliability supporting reasonable suspicion must be related to the tip's assertion of criminal activity, not merely the tip's identification of the suspect:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

529 U.S. 266, 272 (2000). The Court noted that reliability as to identification may be important in other criminal law contexts, but reliability as to the likelihood of criminal activity is "central in anonymous-tip cases." *Id.* (citation omitted).

9

**C.     Analysis**

Furr contends that the actions of the police constituted an illegal search.  In response, the State argues that the officers had reasonable suspicion to perform a *Terry* frisk because the anonymous tip was supported by the following indicia of credibility established by evidence at the suppression hearing:  (1)  Furr matched one of the descriptions given by the anonymous tipster; (2) Furr was located in a "high crime, high drug" area; (3) Furr walked away from Alvarez in a "furtive" manner; (4) Furr "was acting kind of suspicious, kind of anxious, nervous, sweating, like he was trying to be evasive and avoid us"; and (5) when Ayala asked Furr whether he had a weapon, Furr "didn't respond initially" and appeared to be under the influence of drugs.[4]

The State argues that this case is analogous to *Matthews*, where the Texas Court of Criminal Appeals held that an anonymous tip alleging that a suspect was selling crack cocaine at a particular location was sufficient to establish reasonable suspicion to detain, under the totality of the circumstances, because it was supported by the following indicia of credibility:  (1) appellant was found "late at night" in a "high-crime area known for drug and weapons violations"; (2) appellant "was dressed as the 911 caller had described and was named as the 911 called had said"; (3) appellant was sitting in a vehicle which matched the description given by the tipster "with the key in the ignition, but the engine off," which is behavior "consistent with [that of] a drug dealer selling crack cocaine out of

---

[4] The State also argues that Furr waived his issue because his written motion to suppress complained only of an "illegal traffic stop, arrest, or search . . . ."  The State contends that "'traffic stop' implies pulling over the driver of a vehicle, rather than the temporary detention of a pedestrian" and that "Furr's motion failed to give the State adequate notice of the ground that he now raises on appeal." However, the transcript of the suppression hearing shows that the State was well prepared to litigate the specific issues in dispute.  Moreover, when read in the disjunctive, Furr's complaint could be reasonably construed as challenging an "arrest" or "search" unrelated to any traffic stop.  We reject the State's waiver argument.

10

his vehicle"; and (4) appellant "refused to comply with the officers' request to show both of his hands, and he did so in a suspicious manner." 431 S.W.3d at 604–05, n.32.

We find *Matthews* distinguishable for several reasons. First, the Court in that case considered whether officers had reasonable suspicion to detain, not reasonable suspicion to perform a *Terry* frisk; therefore, the Court did not discuss whether police were aware of specific, articulable facts indicating that the appellant possessed a weapon. *See id.* at 602–03 (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)); *see also Carmouche*, 10 S.W.3d at 329. Second, the anonymous tip in *Matthews* contained not only a "detailed description" of the appellant, but also identified the appellant by name and contained a "detailed description" of appellant's vehicle and its location. *Id.* at 604. The fact that the appellant and his vehicle matched "detailed description[s]" given by the tipster was a strong indicium of credibility that is absent in this case. Here, the anonymous tip merely described the suspects' location, the color of their skin, and the color of some of their clothing. In contrast with the tip in *Matthews*, the tip at issue here failed to describe the physical characteristics of either suspect beyond skin color; failed to identify either suspect by name; failed to describe any vehicle in which the suspects could be found; and failed to specify the type of drugs allegedly being used. Moreover, the tip did not indicate that the tipster had knowledge of the suspects' future behavior, *cf. White*, 496 U.S. at 332 (noting that "the caller's ability to predict respondent's *future behavior* . . .* demonstrated inside information—a special familiarity with respondent's affairs" and was thus indicative of reliability), nor did the tip contain any indication that it was reported contemporaneously with the alleged offense. *Cf. Navarette v. California*, 134 S. Ct. 1683, 1689 (U.S. 2014) (noting that "statements about an event and made

11

soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation" (citation omitted)). The tip at issue here was vague and undetailed.[5] The fact that the suspects matched the description provided by the tipster is therefore less indicative of the tip's credibility here than it was in *Matthews*.

Third, the circumstances faced by the officers in *Matthews* were much different than those faced by Ayala and Alvarez in the instant case. The *Matthews* encounter took place "late at night," 431 S.W.3d at 605, whereas the encounter here took place at around 2:00 p.m. The area where Matthews was found was "known . . . for weapons offenses," *id.*, but there was no such evidence in this case. The behavior of the suspect was also markedly different from the facts at issue here. One of the officers in *Matthews*, after confirming that the suspect and his vehicle matched the "detailed description[s]" provided by the tipster, approached the passenger-side window and observed appellant "concealing his left hand near the driver's side door," which is where officers eventually discovered marijuana. *Id.* at 604, n.30. "Fearing that appellant was holding a weapon," the officer "asked appellant to show his hands," but appellant "did not comply; rather, he glanced at [the officer] but ignored his request." *Id.* at 604–05. "When [the officer]

---

[5] The *Matthews* tip was provided via a 911 call. *Matthews v. State*, 431 S.W.3d 596, 600 (Tex. Crim. App. 2014). The *Matthews* Court noted that the United States Supreme Court recently considered this fact to be an indicium of reliability because the 911 emergency system "'has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity.'" *Id.* at 604 n.29 (quoting *Navarette v. California*, 134 S. Ct. 1683, 1689 (U.S. 2014)). The *Matthews* Court then discounted this consideration, however, because there was no indication that the 911 caller "knew that her number could be traced." *Id.* (quoting *Navarette*, 134 S. Ct. at 1694 (Scalia, J., dissenting) ("It is the tipster's *belief* in anonymity, not its *reality*, that will control his behavior. There is no reason to believe that your average anonymous 911 tipster is aware that 911 callers are readily identifiable.") (citation omitted)). In any event, there was no evidence that the anonymous tip in this case was provided via the 911 system. Thus, to whatever extent the *Matthews* Court considered this fact to be indicative of reliability, that factor is not present here.

12

repeated his request to see appellant's left hand, appellant responded that 'he was showing . . . his hands,'" even though his left hand remained hidden by the driver's side door. *Id.* at 600, 605. The other officer then asked the suspect to exit the vehicle and performed a *Terry* frisk. *Id.* at 605. The behavior of the appellant in *Matthews*—including repeatedly disobeying the officers' requests to show hands—strongly supported a suspicion that criminal activity was afoot and that the appellant was armed and dangerous.

Here, the only "specific and articulable facts" regarding suspicious behavior engaged in by Furr before he was stopped by Ayala—according to the evidence viewed in the light most favorable to the trial court's ruling, *see Dixon*, 206 S.W.3d at 590—were (1) looking over his shoulder while he walked away from Alvarez when Alvarez was talking to Collier, (2) appearing "nervous" and "out of it" and "sweating" prior to the frisk, and (3) failing to "respond initially" when Ayala asked if he was carrying a weapon. That Furr looked back at Alvarez when he walked away is not indicative of imminent criminal activity and is not "sufficiently distinguishable" from the behavior in which an innocent person would have engaged. *See Wade*, 422 S.W.3d at 670 ("[T]he totality of the suspicious circumstances that an officer relies on must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." (quotation omitted)). Ayala stated that Furr was acting "nervous" and was "sweating," but nervousness alone is insufficient to constitute reasonable suspicion. *Id.* Moreover, we do not believe that sweating while standing outside in the middle of a south Texas summer afternoon is indicative of anything but a properly functioning human thermoregulation system.

13

Nevertheless, Ayala additionally testified that Furr "was just kind of out of it," "looked like he was under the influence of a drug," and "didn't respond initially" when asked if he was carrying a weapon. Evidence that Furr appeared to be nervous and under the influence of drugs is, when considered together, indicative of the anonymous tip's credibility and supported a brief investigative detention. *See J.L.*, 529 U.S. at 272 (holding that, to establish reasonable suspicion, an anonymous tip must be supported by indicia of reliability that is related to the tip's assertion of criminal activity, not merely the tip's identification of the suspect); *Carmouche*, 10 S.W.3d at 329. And, with the officers already having reasonable suspicion to briefly detain Furr to investigate, Furr's failure to respond promptly to the officer's question regarding whether he was armed constituted a "specific and articulable fact" indicating that Furr might have possessed a weapon.[6] *See United States v. Tinnie*, 629 F.3d 749, 752 (7th Cir. 2011) ("Coupled with [other]

---

[6] The State contends that an officer's "reasonable belief that a suspect is armed and dangerous may be predicated on the nature of the suspected criminal activity," *see Terry*, 392 U.S. at 27–28 (finding officers could reasonably assume that offense of robbery would involve use of weapons, although officer did not observe a weapon or any physical indication of a weapon), and it notes that the Texas Court of Criminal Appeals has recognized that "it is objectively reasonable for a police officer to believe that persons involved in the drug business are armed and dangerous." *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006) (citing *Carmouche v. State*, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000)). However, the cases that have held that reasonable suspicion may arise purely from the nature of the suspected criminal activity have involved allegations of drug trafficking, not merely drug use. *See, e.g., Griffin*, 215 S.W.3d at 405 (confidential informant advised police that "appellant was selling crack cocaine at a specific location in a 'drug trafficking' part of town"); *Carmouche*, 10 S.W.3d at 330 (noting that the officer "stopped appellant pursuant to an articulable suspicion that appellant was trafficking in cocaine" and that "weapons and violence are frequently associated with drug transactions"); *United States v. Brown*, 913 F.2d 570, 572 (8th Cir. 1990) (noting that the officers "had an articulable reasonable suspicion that the occupants of [appellant's car] were dealing drugs" and that "weapons and violence are frequently associated with drug transactions"); *United States v. Trullo*, 809 F.2d 108, 113 (1st Cir. 1987) (noting that "officers suspected that appellant had just engaged in an illegal transaction" and finding frisk justified because "concealed weapons were part and parcel for the drug trade"); *United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979) ("It is not unreasonable to suspect a dealer in narcotics might be armed"). *United States v. Oates*, 560 F.2d 45, 62 (2d Cir. 1977) (finding *Terry* frisk justified because, to "substantial dealers in narcotics, firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia"). Here, as the officers conceded, there was no indication from any source—including the anonymous tipster—that any individuals were engaged in trafficking drugs. Accordingly, we do not believe that the officers had reasonable suspicion that Furr was armed merely because he was accused of using drugs.

14

suspicious circumstances, [appellant's] silence when twice asked if he had any weapons, but his immediate denial of possessing drugs, provided Kaiser with reasonable suspicion that Tinnie was armed and thus justified the frisk."); *United States v. Noble*, 364 F. App'x 961, 965 (6th Cir. 2010) (holding that officers had reasonable suspicion that suspect was armed in part because of appellant's "lack of response when asked if he had a weapon"); *United States v. Hudnell*, 322 F. App'x 772, 773 (11th Cir. 2009) (holding that pat-down was justified based in part on appellant's "silence as to whether he had a weapon"); *In re P.M.*, No. 04-02-00691-CV, 2003 WL 1964962, at *3 (Tex. App.—San Antonio Apr. 30, 2003, pet. denied) (holding that officer had reasonable suspicion to frisk juvenile appellant in part based on appellant's silence when asked by police if he had a weapon in his possession).[7] Those facts, taken together, justified the *Terry* frisk. *See Terry*, 392 U.S. at 30–31; *Wade*, 422 S.W.3d at 669 (noting that, to legally perform a *Terry* frisk, police must have reasonable suspicion that the suspect is armed and dangerous); *Carmouche*, 10 S.W.3d at 329 ("[T]he additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon").

Because the tip in this case was utterly anonymous and made only the barest, most basic allegations of illegality, reasonable suspicion would arise only if police corroborated the tip with information sufficient to indicate its reliability. *See Martinez*, 348

---

[7] The United States Supreme Court has held that "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). However, *Bostick* and the cases it relies on discuss only whether police had reasonable suspicion to *detain*, not reasonable suspicion to *frisk*. *See id.* (citing *I.N.S. v. Delgado*, 466 U.S. 210, 216–17 (1984); *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Brown v. Texas*, 443 U.S. 47, 52–53 (1979)). Moreover, in this case there were facts other than Furr's failure to respond promptly to the question of whether he was armed that supported reasonable suspicion to detain—such as the fact that Furr matched the anonymous tipster's vague description and that he appeared to be under the influence of drugs. Therefore, we do not believe that *Bostick* and the cases cited therein are applicable.

15

S.W.3d at 923 ("An inverse relationship exists between the reliability of the informant and the amount of corroborated information required to justify the police intrusion; the less reliable the tip, the more information is needed."). The evidence of the totality of the circumstances, viewed in the light most favorable to the ruling, supports the trial court's implicit finding that police possessed such information when they performed the *Terry* frisk of Furr. We therefore conclude that the search did not violate Furr's Fourth Amendment rights and that the trial court did not err in denying Furr's motion to suppress.

## III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of January, 2015.

Print this page

# Envelope 4238100

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 02/20/2015 04:52:37 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | |
| Firm Name | Individual |
| Filed By | TRAVIS BERRY |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | TRAVIS BERRY LAW |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | |
| Reference Number | |
| Comments | PDR requesting oral argument |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 02/26/2015 11:25:32 AM | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| *Lead Document* | PDR.pdf | [Original] |
|---|---|---|
| *Attachments* | COA Opinion.pdf | [Original] |